Scott Allan **FREDERICK**, Petitioner,

v.

The **STATE** of Oklahoma, Respondent.

No. C–89–605.

Court of Criminal Appeals of Oklahoma.

May 2, 1991.

As Amended May 20, 1991.

## DENIAL OF PETITION FOR WRIT OF CERTIORARI

Petitioner, Scott Allan Frederick, was convicted in the District Court of Canadian County before the Honorable Ed Cunningham, of Kidnapping (CRF–88–495), Larceny of an Automobile (CRF–88–497), Use of a Weapon During the Commission of a Crime (CRF–88–498), Assault with a Deadly Weapon (CRF–88–499), and Grand Larceny (CRF–88–500) following his entry of a blind plea of guilty to the charges. In addition, in CRF–88–496, Petitioner entered a plea of nolo contendere to the charge of Rape in the First Degree. As a result of his pleas, Petitioner was sentenced to serve ten (10) years each for the kidnapping, larceny of an auto, use of a weapon, and the assault charge. He was sentenced to serve fifty (50) years for the rape and five (5) years for the grand larceny. Following his sentencing, Petitioner properly filed a request to withdraw his pleas. That request was denied after the trial court conducted an extensive hearing on the merits of the request. Petitioner now asks this Court to grant him a Writ of Certiorari and vacate the sentences which he received for his crimes. We decline to grant the request.

Petitioner was charged with the six offenses detailed above after he kidnapped and raped a woman from an Oklahoma City car wash. P.B. was washing her car when Petitioner forced her back into the car at gunpoint. Petitioner demanded that P.B. drive for a considerable distance until they reached a field in Canadian County. Petitioner forced P.B. to remove her clothes and then raped her.

Following the rape, a second victim, Loren Smith, drove by P.B.'s car. When he saw P.B. mouth the words "help me," he stopped. Petitioner forced him to remove his clothes and pointed the gun at him

several times. Smith decided to try to escape and turned and ran from Petitioner. Petitioner then fired several shots at Smith. Petitioner took some cash from Smith's wallet along with a Winchester rifle.

Petitioner claims that he should be allowed to withdraw his pleas to the charges for several reasons. First, he claims that "a substantial question" as to his mental capacity existed at the time of his crimes. He also claims that because of his limited reading ability and educational deficiencies, "it is doubtful" that he understood the full ramifications of his plea. Finally, he alleges that he received ineffective assistance of counsel because his appointed attorney would not discuss his trial defense, long term drug abuse, with his mother. We disagree and affirm the trial court's denial of Petitioner's request to withdraw the plea.

When evaluating the validity of a guilty plea, we are concerned only with whether or not the pleas were entered voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As the Tenth Circuit has recognized:

> The only point worthy of consideration ... is the voluntariness of the guilty plea. Such a voluntary plea waives all non-jurisdictional defenses and a sentence imposed thereupon is the result of that plea and not the result of evidence theretofore obtained.

*Atkins v. Kansas*, 386 F.2d 819, 820 (10th Cir.1967). In this instance, Petitioner's reliance on the fact that he may have had a defense or mitigating evidence to present at trial is irrelevant to the determination of whether his plea was properly accepted. Taken altogether, Petitioner's claims do not allege that his plea was involuntary, a problem fatal to his present claim. *Estell v. State*, 766 P.2d 1380 (Okl.Cr.1988).

Certainly any determination that the plea was entered knowingly and voluntarily requires a preliminary finding that the accused is competent and thus able to properly exercise his rights. In this case, Petitioner asserts that because of his long history of drug use, his competency *at the time the crimes were committed* should have been questioned. This determination has no application to a determination of competency to enter a plea. While it is possible, as Petitioner points out, that diminished mental capacity may have provided some sort of defense to the charges if a trial had been elected, it is not a consideration when measuring the validity of a guilty plea. Likewise, Petitioner's claims concerning his poor reading skills and lack of formal education have no independent bearing on the voluntariness of his plea, except to the extent that there is proof that the plea was not truly voluntary or was made without a complete understanding of its consequences.

Examination of the record before us indicates a very conscientious effort by the trial court to ensure that the plea offered by Petitioner was adequately grounded in both fact and law. At no point in the proceedings, not even now before this Court, has there been any evidence that Petitioner was incompetent at the time the plea was entered. Certainly there were allegations that Petitioner was under the influence of PCP at the time he committed the crime, however, neither the Petitioner or his attorney ever indicated even the slightest doubt as to Petitioner's competence to enter a plea. The trial court made the appropriate inquires at two different hearings before sentence was finally rendered. A presentence report was ordered which showed no history of mental disorders. The trial court conducted a lengthy hearing after the request to withdraw the plea was made at which time medical evidence was offered concerning the long term effects of Petitioner's drug usage. The trial court found that Petitioner was competent to enter a plea and that no question had been raised concerning that competency. We find no reason to dispute the findings of the trial court. *Ocampo v. State*, 778 P.2d 920 (Okl.Cr.1989).

Petitioner also claims that his low level of reading ability and his lack of education also indicates that he was incapable of understanding the effect of his plea.

Once again, the record before us disputes this claim. Regardless of Petitioner's level of reading comprehension, the record supports the findings of the trial court that Petitioner was able to comprehend the events which occurred in the courtroom. Petitioner, while only eighteen years old, had received his GED and was tested as having an average I.Q. When the judge asked him to read portions of the presentence report, Petitioner indicated that he had no trouble comprehending its content.

In any event, the entire plea proceeding was orally undertaken. The court specifically questioned Petitioner on two different occasions. In both instances the court asked him if he understood the waiver of each of the rights involved with the proceedings. In every case Petitioner replied that he understood. All of the requirements of *King v. State,* 553 P.2d 529 (Okl. Cr.1976) were carried out to the letter of the law.

We find as did the trial court, that Petitioner was competent to enter his plea. The trial court found, and Petitioner agreed, that his desire to withdraw his plea was primarily based on his dissatisfaction with the sentences which he received for the crimes which he committed. No legal reason has been presented which compels us to find that the trial court abused its discretion when it denied Petitioner's request to withdraw his plea. *Hopkins v. State,* 764 P.2d 215 (Okl.Cr.1988); *Vuletich v. State,* 735 P.2d 568 (Okl.Cr.1987); *Ligon v. State,* 712 P.2d 74 (Okl.Cr.1986).

■ The fact that Petitioner may have had some defense to the commission of the crime is of no consequence to a determination of the voluntariness of a guilty plea. The claim of ineffective assistance of counsel is without merit in that Petitioner's history of drug abuse was well known to Petitioner, as was the question of whether or not he was under the influence of PCP at the time he committed the crimes. We addressed a similar situation in *Bromley v. State,* 757 P.2d 382, 384 (Okl.Cr.1988) and our holding reflects comparable conclusions. In that case, we held:

Throughout the proceedings, appellant was represented by counsel. The record is replete with occasions during which appellant was advised by his counsel. Appellant testified that he had fully discussed the nature and consequences of entering a guilty plea with his attorney, and was satisfied with the representation of counsel.... Accordingly, we see no violation of the guidelines set forth by *King.* This assignment of error is without merit.

Accordingly, the decision of the trial court is AFFIRMED. IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE,
Presiding Judge
/s/ Gary Lumpkin
GARY LUMPKIN,
Vice Presiding Judge
/s/ Tom Brett
TOM BRETT,
Judge
/s/ Ed Parks
ED PARKS,
Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Judge